SPeaesojst, O. J.
 

 We are satisfied by the pleadings and
 
 *244
 
 proofs, and, particularly, the exhibit annexed to the deposition of Samuel Calvert, which is in the hand-writing- of the defendant, Oapehart, and signed by him, and amounts in substance to a stipulation that the slaves shall be taken out of this State, in ten days, that Oapehart sold the slaves with an intent that they should be carried beyond the limits of the State, for the purpose of defrauding the plaintiffs and defeating the estate to which they are entitled under the limitations in the will.
 

 It was objected, on the argument here, that the plaintiffs could not have a decree because the assent of the executor was not established; and the objection was put on two grounds:
 

 1. As the executor died without qualifying, he had no power to assent.
 

 It is settled that, at common law, an executor may give his assent to a legacy, and if he dies before probate, or before he qualifies, it is well enough, and such assent vests the property in the legatee. Bacon’s Abridg. 3 vol. 52; 1 Will’s on Ex’rs 160. So the question is, do our statutes change the law?— We think they do not. By the Rev. Code, ch. 46, sec 9, it is provided, “when any person shall die intestate, and bis estate is in such a situation as to require immediate care, any three justices of the peace may grant special letters of administration;” and section 4 provides: “Ho person shall enter upon the administration of any deceased person’s estate until he has obtained letters of administration, under a penalty of $100.” These sections obviously apply to cases of intestacy, and leave executors at liberty to take care of the estate, and do all such acts, before probate and qualification, as it was lawful for them to do at common law. Section 12 provides: “When a testator shall appoint any person,
 
 residioxg out of the
 
 State, executor of his will, the Court shall require him to give bond and security, and until the executor shall enter into such bond, he shall have no authority to intermeddle with the estate;” thus, by implication, recognising the common law power of an executor who resides in the State.
 
 Hairston
 
 v.
 
 Hairston, 2
 
 Jones’ Eq. 123, was the case of a non-resident executor, and
 
 *245
 
 is put expressly on the ground that, byforce'of this section of the statute, .such an executor had no power to give his assent to a legacy, as he had not executed the bond required.
 

 2. The assent is not proved as a matter of fact.
 

 There is no direct evidence of an assent; but it is admitted that the legatee, William M. Gums, in 1846, soon after the death of the testatrix, took the slaves into his possession, and kept them as his property until 1852, when he sold them to the defendant, Capehart, who kept them until he sold to the other defendant. Erom this long possession, we are of opinion an assent ought to be presumed against one who purchased from the legatee — treating him as the legal owner, and who dealt with the property on the assumption that the title had vested by force of an assent; for allhough there is no es-toppel, strictly speaking, still, it comes with an ill grace from him to attempt to defeat the claim of the plaintiffs, by insisting upon a want of evidence in respect to a fact which, in his ■“actings and doings,” he has all along taken for granted.
 

 The decree will require the defendant, Capehart, to pay into the office the sum of $1125, the price at which he sold the ■slaves, with interest from 1854, (the date of the death of William M. Gums,) to be invested for the use of the plaintiff, Penelope, who will be entitled to the interest accruing thereon, during her life or wddowhood, together with what has already accrued.
 

 Pee Cdheam, Decree accordingly.